IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | :   **CRIMINAL NO.** |
| | :   **21-461-1** |
| vs. | : |
| | : |
| **TAUQEER LEONARD** | : |
| | : |

**MEMORANDUM**

**YOUNGE, J.**                                                                                              **JUNE 8, 2022**

Presently before this Court is Defendant Tauqeer Leonard's Motion to Suppress ("Mot.," ECF No. 16). The Motion, filed February 25, 2022, seeks to suppress the physical evidence recovered from his vehicle during a traffic stop on August 5, 2020, which includes a 9mm semi-automatic pistol and two jars containing marijuana. (Mot. at 1.) The Government filed its Response on March 11, 2022 (ECF No. 18), and the Court held a suppression hearing on March 23, 2022. (*See* 3/23/22 Hearing Transcript ("Tr."), ECF No. 23.) Also on March 23, 2022, the Court directed the parties to submit proposed findings of fact and conclusions of law ("Proposed Findings") within ten days of the issuance of the hearing transcript. (Tr. at 92:7-10.) The hearing transcript was issued on April 19, 2022. (ECF No. 23.) On April 29, 2022, both parties submitted their Proposed Findings. (Govt. Proposed Findings, ECF No. 25; Def.'s Proposed Findings, ECF No. 26.)

After considering the Motion, the Government's Opposition (ECF No. 18), the evidence and testimony presented at the hearing, and the parties' respective proposed findings, the Court denies the Motion to Suppress based on the findings of fact and conclusions of law set forth below.

I. **FINDINGS OF FACT**

Based on the Court's assessment of the record, including the testimony, demeanor, and credibility of the witnesses at the suppression hearing, the Court makes the following factual findings.[1]

On April 28, 2020, Philadelphia Police Officer Kevin McGrorty and his partner Officer Vincent Pinto were patrolling the Lawncrest neighborhood of Philadelphia. (Tr. 16:1-14.)[2] They were working in plain clothes and driving an unmarked vehicle. (Tr. 16:13-14; 21:4-10; 62:16-21.) After observing a red Hyundai Sonata with an inoperable driver's side brake light, Officers McGrorty and Pinto conducted a traffic stop. (Tr. 18:19-19:3.) Defendant was the driver. (Tr. 16:15-18.) Officers McGrorty and Pinto's investigation showed the wrong license plate was on the car and that Defendant was driving without a valid license. (*Id*.) Officer McGrorty also observed colorful plastic tubes containing marijuana on the driver's side floorboard. (Tr. 19:6 – 25.) During the course of the stop, Defendant advised the officers that he accidentally placed the wrong tag on the car. (Tr. 20:0-18.) Since the car was otherwise in good standing, Defendant's girlfriend was permitted to come to the scene and take the car. (*Id*.) Officers seized Defendant's containers of marijuana and issued him a code violation notice. (Tr. 18:1-14.)

On August 5, 2020, at approximately 9:15 p.m., Officer McGrorty and Officer Pinto were again patrolling the Lawncrest neighborhood. (Tr. 20:19-25.) Officer McGrorty observed

---

[1] "It is well-settled that at a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. Harris*, 884 F. Supp. 2d 383, 387 (W.D. Pa. 2012) (internal citations and quotations omitted).

[2] Officer McGrorty is a specially trained member of the Narcotics Enforcement Team, which targets street-level narcotics sales. (Tr. 9:1 – 10:9.) He is specifically trained in narcotics, including their appearance, odor, and how they are concealed. (Tr. 11:1 – 24.) He has experience with traffic stops resulting in the seizure of firearms, including the seizure of loaded firearms. (Tr. 14:9 – 24:4.) Officer McGrorty was raised in the Second District of Philadelphia and he has been patrolling this district for the past ten years. (Tr. 8:20 – 25; Tr. 9:1 – 9:7.) Based on his personal and professional connections to the Second District, Officer McGrorty knows the Second District is a high crime and a high drug area. (Tr. 15:15 – 22:25.)

Defendant on the 5700 block of Colgate Street, and observed the driver's side brake light was still non-functioning. (Tr. 21:11-25.) Officer McGrorty reported to Officer Pinto that he remembered Defendant previously did not have a valid driver's license. (Tr. 21:17-25.)

The officers initiated a traffic stop of Defendant's vehicle. (Tr. 26:4-6.) Upon approaching Defendant's driver side window, Officer McGrorty observed a strong odor of fresh marijuana coming from the window. (Tr. 27:9-22.) Officer McGrorty asked Defendant if he had a valid driver's license yet, and Defendant shrugged his shoulders and said no. (*Id*.) Using a police-issued flashlight, Officer McGrorty illuminated the area around the defendant's feet. (*Id*.) Officer McGrorty observed a yellow-tinted plastic container holding what the officer immediately knew to be marijuana. (*Id*.; Gov't Mot. Hrg. Ex. 2 (physical evidence – yellow container of marijuana); Gov't Mot. Hrg. Ex. 2A (photograph of yellow container of marijuana).) Officer McGrorty asked Defendant what the item was and he stated he did not know. (Tr. 27:23-25; Tr. 28:1.)

Officer McGrorty ordered Defendant out of the car to recover the yellow container of marijuana. (Tr. 35:8-19.) At the time Officer McGrorty recovered the yellow container, he observed a camouflaged fanny pack tucked under the driver's side seat. (Tr. 36:11 – 23; Gov't Mot. Hrg. Ex. 3 (photograph of fanny pack); Gov't Mot. Hrg. Ex. 3A (physical evidence – fanny pack).) From his experience and viewpoint, Officer McGrorty knew the fanny pack was big enough to hold narcotics. (Tr. 36:19-23.) For this reason, Officer McGrorty reached for the fanny pack. (*Id*.; Tr. 43:1-4.) As soon as Officer McGrorty grabbed the bottom of the fanny pack, he felt the top slide of a firearm and the weight of a loaded weapon. (Tr. 36:11-18; Tr. 43: 5-14; 44:1-7.) From within the fanny pack, Officer McGrorty recovered a white container of marijuana, similar in size and shape to the yellow container, as well as the loaded firearm. (Tr. 37-39; Gov't Mot. Hrg. Ex. 4A (physical evidence – seized firearm); Gov't Mot. Hrg. Ex. 4 (photograph of seized

firearm).) Officer McGrorty recognized that the containers of marijuana seized in this investigation were not consistent with the type of packaging used with medical marijuana. (Tr. 34:7-25; Tr. 35:1-7.) Officer McGrorty immediately opened the fanny pack to make the weapon safe to handle, by removing the magazine and eight live rounds of ammunition. (Tr. 43:5-9; Gov't Mot. Hrg. Ex. 4B (physical evidence – eight bullets); Gov't Mot. Hrg. Ex. 4C (physical evidence – magazine).)

Officer Pinto moved the car to a legal parking spot and the officers permitted Defendant's girlfriend to come retrieve the car. (Tr. 49:1-22.) Officer McGrorty elected not to tow the car because Defendant had a young child and the child's car seat was in the back of the car, and the car was otherwise lawfully registered and insured. (Tr. 49:1-16.)[3]

Following the August 5, 2020, Officer McGrorty provided an interview to a Philadelphia detective that was documented in a report known as a 75-483. (Gov't Mot. Hrg. Ex. 6 (August 3, 2020 Form 75-483).) According to the Form 75-483, Officer McGrorty reported that he initiated the vehicle stop on that date because Defendant was operating a vehicle without a license and the vehicle had a rear brake light not functioning. (Tr. 55:1-25; Tr. 84-85; Gov't Mot. Hrg. Ex. 6.) The 75-483 also documented Officer McGrorty recovering the yellow jar of marijuana from the driver's floorboard and plainly feeling the firearm in the fanny pack. (*Id.*) The statement of Officer McGrorty recorded in the 75-483 is consistent with his testimony and consistent with the physical evidence. (Gov't Mot. Hrg. Ex. 7.)

---

[3] The Live Stop Program permits cars in Philadelphia to be towed by the parking authority if the car cannot be legally driven due to certain vehicle code violations, including the driver being unlicensed or if the car is in the middle of the roadway. (Tr. 47:2-12.) Because the defendant was an unlicensed driver and parked in a roadway, Officer McGrorty had authorization under the Live Stop Program to tow the car. (Tr. 47:13-22.) If a car is towed, the contents of the car must be inventoried by the officer out of safety and to protect the property within. (Tr. 47:1 – 25.)

## II.  LEGAL STANDARDS

The Fourth Amendment guarantees an individual's right to be free from "unreasonable searches and seizures." U.S. Const. Amend. IV. Evidence obtained through an unreasonable search or seizure is subject to exclusion at trial. *See, e.g., Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963). Warrantless seizures are presumptively unreasonable and are therefore prohibited under the Fourth Amendment unless the government establishes that one of the carefully defined exceptions to the warrant requirement applies. *See United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010). The government bears the burden of establishing that such an exception applies. *See United States v. Herrold*, 962 F.2d 1131, 1137 (3d Cir. 1992).

One such exception permits police officers to conduct "a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *see also Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003). Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Wardlow*, 528 U.S. at 123; *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000). Traffic stops fall into this category, and "may be initiated based on reasonable suspicion that a traffic violation has occurred." *United States v. Green*, 897 F.3d 173, 178 (3d Cir. 2018) (citing *Navarette v. California*, 572 U.S. 393 (2014); *see also United States v. Delfin-Colina*, 464 F.3d 392, 396-97 (3d Cir. 2006) (officers may lawfully stop a vehicle if they "possess[] specific, articulable facts that an individual was violating a traffic law at the time of the stop"). As a general rule, a traffic stop is reasonable where the police have reason to believe that a traffic regulation has been violated. *See, e.g., Ohio v. Robinette*, 519 U.S. 33, 38 (1996); *Whren v. United States*, 517 U.S. 806, 813 (1996);

*Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977); *United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997); and *United States v. Johnson*, 63 F.3d 242, 245-47 (3d Cir. 1995).

In order to effect a seizure, an officer must have probable cause. U.S. Const. Amend. IV; *see also Maryland v. Pringle*, 540 U.S. 366 (2003). A probable cause determination requires an inquiry based on the totality of the circumstances. *Pringle*, 540 U.S. at 371. The facts must support a reasonable belief that "there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). In the Third Circuit, smelling marijuana alone, "if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F. 3d 308 (3d Cir. 2005) (citing *United States v. Humphries*, 372 F.3d 653 (4th Cir. 2004)). Where an officer is able to localize the source of marijuana to a person, the officer has probable cause to believe that person committed or has committed a crime. *Humphries*, 372 F.3d at 659.

### III. CONCLUSIONS OF LAW

Applying the foregoing legal standards to the factual findings detailed above, the Court reaches the following conclusions of law.

First, Officers McGrorty and Pinto had reasonable suspicion to initiate the August 5, 2020 traffic stop. It is undisputed that Defendant was operating a vehicle with a broken taillight and without a valid driver's license. Officer McGrorty credibly testified regarding his existing knowledge of Defendant, and his recollection at the time of the stop that Defendant had driven without a valid license. The report generated following the traffic stop corroborates Officer McGrorty's testimony. Thus, the officers had reasonable suspicion to believe Defendant was violating traffic laws.

Defendant argues that the vehicle stop was pretextual; however, this is irrelevant since the officers had reasonable suspicion to initiate the stop. In *Whren*, a unanimous Supreme Court held it was irrelevant whether the police had an ulterior motive for stopping the suspect because the only consideration for the admissibility of the evidence was whether there was an objectively reasonable basis for the stop. *Whren*, 517 U.S. at 812–13. The Third Circuit follows this clear-cut rule. *See, e.g., United States, v. Hunter*, No. 19-3735, 2022 WL 1011225, at *3 (3d Cir. Apr. 5, 2022) ("It has long been axiomatic that 'a traffic-violation arrest ... [is not] rendered invalid by the fact that it was a mere pretext for a narcotics search.' "); *United States v. Petersen*, 622 F.3d 196, 201 (3d Cir. 2010) ("[T]he Supreme Court [has] established a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime."). Since Officer McGrorty observed Defendant committing traffic code violations, he accordingly initiated a traffic stop based on a lawful reason. As the Supreme Court has dictated, whether or not the officers had other intentions in initiating his stop is irrelevant since the traffic stop was supported by reasonable suspicion and was thus constitutional.

Further, Officer McGrorty had probable cause to search the vehicle for narcotics. As stated above, a probable cause determination is based on the totality of the circumstances. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). In the Third Circuit, smelling marijuana alone may establish probable cause. *See, e.g., United States v. Ramos*, 443 F. 3d 308 (3d Cir. 2005). Based on his training and experience as a 10-year narcotics police officer, Officer McGrorty credibly testified that he smelled fresh marijuana emanating from Defendant's car.

Officer McGrorty also had probable cause to conduct a warrantless search of the car based on his plain view of the narcotics within the car. The "plain view" doctrine permits police to conduct a warrantless seizure of private possessions where three requirements are satisfied: (1) an

officer must be lawfully in the place "from which the evidence could be plainly viewed"; (2) an officer must have a "lawful right of access to the object itself"; and (3) the incriminating nature of the object must be "immediately apparent." : *Horton v. California*, 496 U.S. 128, 136-141 (1990); *see also United States v. Stabile*, 633 F.3d 219, 241 (3d Cir. 2011) (citing *United States v. Menon*, 24 F.3d 550, 559-60 (3d Cir. 1994) (recognizing Horton's three-part test)). Officer McGrorty credibly testified that with the assistance of his high-powered, police-issued flashlight, and based on his training and experience, he observed the jar of marijuana on the defendant's floorboard from his lawful vantage from outside the defendant's driver's side window.

We note the fact that Officer McGrorty was acting in his capacity as a Philadelphia Police Officer at the time of the offense has no bearing on the outcome of this federal case. So long as a warrantless vehicle search is a lawful search under the Fourth Amendment, the fact that Officer McGrorty was not a federal agent has no bearing on this issue. *See Moore*, 553 U.S. at 176 (noting that the Fourth Amendment's protections should not vary between state and federal officers); *see also United States v. Glasco*, 917 F. 2d 797, 799 (4th Cir. 1990); *United States v. Chavez-Vernaza*, 844 F. 2d 1368, 1373 (9th Cir. 1987) (explaining that "the admissibility of evidence" for Fourth Amendment purposes does not depend "on the presence or absence of federal involvement at the evidence-gathering stage of an investigation.").

Further, the Pennsylvania Medical Marijuana Act has no relevance in the federal question before this Court. Federal law governs the admissibility of evidence in federal court. Whether a search or seizure is reasonable under the Fourth Amendment is a question of federal law and does not depend "on the law of the particular State in which the search occurs." *California v. Greenwood*, 486 U.S. 35, 43 (1988) (holding Fourth Amendment does not prohibit the warrantless search and seizure of garbage left for collection outside the curtilage despite possibly contrary

California law); *United States v. Rickus*, 737 F. 2d 360 (3d Cir. 1984) (overruling the district court's application of state law to suppress the search of a car trunk). Further, this District has also recognized that under the Supremacy Clause, the federal Controlled Substances Act trumps the Pennsylvania medical marijuana statute. *United States v. Bey*, 341 F. Supp. 3d 528 (E.D. Pa. 2018) (J. Kearney) (defendant's possession and use of medical marijuana, though authorized under state law, violated the terms of his federal supervised release); *see also United States v. Schostag*, 895 F.3d 1025, 1028 (8th Cir. 2018) (same). Thus, the 2016 state statute has had no effect on the controlling federal law applicable to the issue at hand.

Since the officers' initial stop was supported by reasonable suspicion, and further search and seizure of the items within Defendant's vehicle was supported by probable cause, we discern no violation of Defendant's rights. Despite the pretextual nature of Defendant's stop, the Supreme Court has directed that such policing is constitutional. As a result, the evidence obtained during the August 5, 2020 stop will not be suppressed.

IV.  **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Suppress is denied. A corresponding Order will be issued concurrently herewith.

**BY THE COURT:**

 /s/ John Milton Younge
**JUDGE JOHN MILTON YOUNGE**